# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL ACTION NO. 1:25-CV-00288-KDB

TRACEY LEIGH JONES,

    **Plaintiff,**

    v.

FRANK BISIGNANO,
COMMISSIONER OF SOCIAL
SECURITY,

    **Defendant.**

**MEMORANDUM AND
ORDER**

**THIS MATTER** is before the Court on Plaintiff Tracey Leigh Jones' appeal of an unfavorable administrative decision denying her application for disability insurance benefits under the Social Security Act. Doc. No. 6. Having reviewed and considered the parties' briefs, the administrative record, and applicable authority, and for the reasons set forth below, the Court finds that the Defendant Commissioner's decision to deny the Plaintiff Social Security benefits is supported by substantial evidence and uses the correct legal standards. Accordingly, the Commissioner's decision will be **AFFIRMED**.

## I.    PROCEDURAL BACKGROUND

On October 11, 2021, Plaintiff Tracey Leigh Jones filed an application for disability insurance benefits under Title II of the Social Security Act, alleging that she had been disabled since July 5, 2020.[1] Doc. No. 6. at 1. Jones' claim was denied initially and upon reconsideration. *Id.* at 2. A hearing was held before Administrative Law Judge ("ALJ") James Martin on March 14,

---

[1] Jones later amended her alleged onset date to December 13, 2021. Doc. No. 4-2 at 18, 20.

1

2025. *Id.* After conducting the hearing, the ALJ denied Jones' application in a decision dated March 26, 2025. *Id.* The Appeals Council denied Jones' request for review; thus, the ALJ's determination stands as the final decision of the Commissioner. *Id.* at 3. Jones now timely seeks judicial review under 42 U.S.C. § 405(g).

## II.   THE COMMISSIONER'S DECISION

The ALJ followed the required five-step sequential evaluation process ("SEP") established by the Social Security Administration ("SSA") to determine whether Jones was disabled under the law during the relevant period.[2] At step one, the ALJ found that Jones was not currently engaged in substantial gainful activity and had not done so from the amended alleged onset date of December 13, 2021, through the date of his decision. Doc. No. 4-2 at 20 (citing 20 C.F.R. §§ 404.1571, et seq.). At step two the ALJ determined that Jones had the following severe impairments: "cervical degenerative disc disease, lumbar scoliosis with degenerative disc disease, coronary artery disease, COPD, type 2 diabetes with peripheral neuropathy, right shoulder adhesive capsulitis, adjustment disorder with depression, generalized anxiety disorder, and PTSD (20 CFR 404.1520(c))." *Id.* At step three, the ALJ found that none of Jones' impairments, nor any combination thereof, met, or equaled one of the conditions in the Listing of Impairments at 20

---

[2] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but under step five the Commissioner must prove the claimant can perform other work in the national economy despite her limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

2

C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). *Id.* at 22.

Before proceeding to step four, the ALJ determined that Jones had the following residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can sit 6 hours in an 8-hour day and stand and/or walk 6 hours in an 8-hour day. She can push and pull as much as she can lift and/or carry, but she can occasionally operate foot controls bilaterally. She can operate hand controls with the right hand occasionally and with the left hand frequently. She can occasionally reach overhead with the right upper extremity and do all other reaching with the right upper extremity on a frequent basis with the right upper extremity. She can perform frequent handling, fingering, and feeling bilaterally. She can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, balance occasionally, stoop frequently, kneel occasionally, crouch frequently, and never crawl. She can never work at unprotected heights, with moving mechanical parts frequently, in humidity and wetness frequently, in dust, odors, fumes, and pulmonary irritants frequently, in extreme heat frequently, and in vibration occasionally. She can sustain concentration, persistence, and pace sufficient to carry out simple instructions in 2-hour increments with no specific production rate such as assembly work or work that requires hourly quotas. She can frequently interact with supervisors, frequently interact with coworkers, and occasionally interact with the public. She can tolerate occasional changes in a routine work setting.

*Id.* at 25-26.

At step four, the ALJ found that Jones was unable to perform any past relevant work. *Id.* at 38. Finally, at step five, the ALJ concluded that there were other jobs in significant numbers in the national economy that Jones could perform based on her age, education, work experience, and RFC. *Id.* These jobs included laundry classifier, garment sorter, and rag sorter. *Id.* at 39. Thus, the ALJ found that Jones was not disabled under the Social Security Act from December 13, 2021, the amended alleged onset date, through the date of his decision. *Id.*

### III.    LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604–05 (4th Cir. 2025); *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 98-99 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 102 (citation modified). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla.[3] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (citation modified). "This isn't a high threshold." *Drumgold*, 144 F.4th at 604. Accordingly, this Court does not review a final decision of the Commissioner *de novo, Metcalf v. Schweiker*, 795

---

[3] As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty ... lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' ... [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not." *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction "is so narrow that it is often very difficult for a court to decide upon which side of the line evidence falls"). Recognizing this difficulty, current South Carolina Supreme Court Justice John C. Few once remarked, in jest, that "scintilla is Latin for 'whatever a judge wants it to mean.' ... To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards ... but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Drumgold*, 144 F.4th at 604; *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

Thus, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation modified). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id.*; *Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding this limited standard of review of the Commissioner's factual determinations, the Court must always ensure that proper legal standards are being followed. *Long v. Kijakazi,* No. 1:22-CV-00091-KDB, 2022 WL 18026331, at \*2–3 (W.D.N.C. Dec. 30, 2022).

## IV.    DISCUSSION

On appeal, Jones asks the Court to remand her case, asserting that the ALJ improperly, and without explanation, disregarded portions of her consultative physical and psychological evaluations. Specifically, Jones contends that the ALJ erred first, by failing to explain his rejection

of the walking limitations assessed by the agency's consultative examiner; and second, by failing to adopt the social interaction limitations recommended by two non-examining psychological consultants.

### A. The ALJ's Rejection of Walking Restrictions

Jones first alleges that the ALJ erred when he rejected, without explanation, the "moderate" walking limitations assessed by Dr. Burgess, an agency consultative medical examiner. In response, the Commissioner contends that the ALJ properly evaluated Dr. Burgess' opinion on Jones' walking ability and explained why he found it unpersuasive.

A claimant's RFC represents "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p, 61 Fed. Reg. 34,474, 34,478 (July 2, 1996). When assessing medical opinions, the ALJ must evaluate the factors identified in 20 C.F.R. §§ 404.1520c(b), (c)(1)–(5) and 416.920c(b), (c)(1)–(5). *See Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (summarizing the post 2017 medical-opinion framework). Although the regulations require consideration of all listed factors, the ALJ is not obligated to articulate findings on each one. *Corbin v. Kijakazi*, No. 2:20-CV-60-M, 2022 WL 990487, at *2 (E.D.N.C. Mar. 31, 2022). Rather, the ALJ must explain how the two "most important factors"—supportability and consistency—inform his persuasiveness determination. *Id.* Supportability concerns the extent to which a medical source grounds an opinion in objective evidence and reasoned explanation, while consistency addresses how well the opinion aligns with the broader record. *Oakes*, 70 F.4th at 212; *Corbin* 2022 WL 990487, at *2.

6

The ALJ must also "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8p, 61 Fed. Reg. 34,474, 34,478 (July 2, 1996). "Medical records frequently contain conflicting … information." *Selfe v. Bisignano,* NO. 5:25-CV-00131-KDB, 2026 WL 1252657, at *3 (W.D.N.C. May 7, 2026). "It is the ALJ's role to evaluate and reconcile these inconsistencies, assess the claimant's residual functional capacity, and articulate findings that are supported by the record." *Id*. When this role is fulfilled, the Court must affirm the ALJ's decision. *Id*.

As a threshold matter, although Jones contends that Dr. Burgess's statement that she had "mildly and intermittently more moderately impaired … walking," amounted to a "moderate walking restriction," the Court disagrees. Doc. No. 4-2 at 34. Dr. Burgess quite literally opined that Jones' walking was *mildly* impaired, becoming moderately impaired only *intermittently*. Moreover, because the RFC reflects the most a claimant can do despite her limitations, 20 C.F.R. § 404.1545(a)(1), even if the ALJ had found Dr. Burgess' opinion persuasive, he could have reasonably concluded that only mild walking restrictions were warranted.

Nevertheless, to the extent that Dr. Burgess' 2022 opinion may have suggested moderate walking limitations, the ALJ found it unpersuasive, explaining Dr. Burgess' exam demonstrated Jones had an only "marginally abnormal gait" which was described as standing "only slightly wide-based" and "minimally unsteady with no lurching or unpredictability." Doc. No. 4-2 at 34. Further, although Dr. Burgess observed that Jones had "difficulty with heel walking, toe walking, standing on one leg, and tandem walking," he also reported that she also had "normal stance and stable station," could "squat without difficulty," and had "normal muscle strength" in her lower extremities. *Id.* Thus, the ALJ clearly explained why he found Dr. Burgess' opinion on Jones' ability to walk unpersuasive.

7

The ALJ also explained how Dr. Burgess' "moderate walking limitation" was inconsistent with the larger record. While Jones alleged leg pain and numbness at times, she did not require an assistive device. *Id*. At her 2023 consultative examination, Jones demonstrated a "normal gait," "no sensory deficits" in her feet, "5/5 muscle strength" in her lower extremities, and the ability to "stand on her heels and toes, squat, and tandem walk normally." *Id.* at 35. The ALJ also found persuasive the Agency physical medical consultants, who suggested that Jones could stand and/or walk for "about 6 hours in an 8-hour day," with additional limitations related to "reaching, handling, fingering, and feeling." *Id.* at 34.

The ALJ considered Jones' reported daily activities, which included caring for a pet dog and young nephews, driving, shopping, attending her nephew's sporting events, going out alone, and going outside "a few times daily." *Id.* at 33. He also considered the impact Jones' diabetes and musculoskeletal conditions had on her ability to walk. The ALJ noted that although Jones complained about diabetic neuropathy in her feet, Jones' A1c had decreased from 13.1% to 8.1% and she did not have any "abnormal" diabetic foot exams. *Id*. at 30, 34.

Similarly, the ALJ considered her orthopedic exams, which demonstrated scoliosis, "varying degrees" of spinal stenosis, and that injections into her shoulder had been helpful. *Id.* at 34–35. Jones also received injections for her lower back pain and had "normal range of motion in the cervical spine, thoracolumbar spine, hands, and left shoulder." *Id*. In accounting for these and all of Jones' conditions, the ALJ limited Jones' RFC to "light exertion," as well as limiting her "lifting, reaching, use of hand controls, handling, fingering, feeling, crawling, and climbing of ladders, ropes, and scaffolds," and "use of foot controls, climbing, balancing, stooping, kneel, crouching, and crawling." *Id.* at 27–28, 30, 34.

In sum, the ALJ thoroughly articulated why he found Dr. Burgess' walking limitation unpersuasive and after balancing the entire record, crafted an RFC limiting Jones to light work and only 6 hours of standing and/or walking in an 8-hour workday—along with other restrictions—and supported it with substantial evidence. *See Drumgold*, 144 F.4th at 604.

**B.     The ALJ's Choice of Language in Defining Social Interaction Limitations**

In Jones' second allegation of error, she contends that the ALJ failed to reconcile the opinions of two non-examining psychological consultants (who recommended only infrequent social interaction) with an RFC permitting frequent interaction with supervisors and co-workers. Doc. No. 6. at 12.

"[T]his Circuit has recognized that there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Jonathan W. v. Kijakazi*, No. 2:23-CV-00315, 2023 WL 5767748, at *9 (S.D.W. Va. Aug. 17, 2023), *report and recommendation adopted,* No. 2:23-CV-00315, 2023 WL 5751445 (S.D.W. Va. Sept. 6, 2023) (quoting *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014)). And an ALJ's "failure to cite specific evidence does not indicate that it was not considered." *Manigo v. Colvin*, No. 0:13-CV-3185-BHH, 2015 WL 74954, at *5 (D.S.C. Jan. 6, 2015) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his ... analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." *Jonathan W.,* 2023 WL 5767748, at *9 (quoting *Clark v. Comm'r of Soc. Sec.*, No. 2:09-CV-417, 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010)) (citation omitted). Thus, an ALJ's opinion is "sufficient if it not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." *Id.* (internal quotations omitted).

9

Finally, it is imperative that an ALJ's decision be "read as a whole in order to discern whether substantial evidence supports a finding." *Id.*

In conducting his analysis, the ALJ noted that the two non-examining psychological consultants opined that Jones could "maintain adequate relationships with co-workers in a work setting with infrequent social interaction requirements and only casual infrequent public contact." Doc. No. 4-2 at 35. Although he found their opinions "persuasive," the ALJ stated that he had "articulated [their findings] in more vocationally relevant terms, such as defining 'non-production' and 'infrequent' social interaction." *Id.* at 36. Yet the Court can locate no point in the decision where the ALJ defines the term "infrequent."

It is true that the RFC stated that Jones could "frequently interact with supervisors [and] frequently interact with coworkers." *Id.* at 25–26. Although Jones contends this to be an error, and the Court agrees that the ALJ could have better explained why the RFC departed from "infrequent social interaction," the ALJ also explains that the record more broadly reflects that Jones has custody of her 6-year-old nephew, cares for her 8-year-old homeschooled nephew, spends time with her grandchildren and family, gets along with her family, friends, and neighbors, gets along with authority figures "fairly well," goes shopping and to her nephew's sporting events, attends church, shops in stores, and can socialize in person and by phone. *Id.* at 36–37. These facts support the ALJ's determination that Jones can engage in more than "infrequent" social interactions with co-workers and supervisors. Nevertheless, to the extent that the ALJ may have erred in failing to clearly explain how he arrived at Jones' RFC, the error is harmless.

Recently, the Middle District of North Carolina confronted a similar argument. In *Keene v. Kijakazi,* a Social Security claimant argued the ALJ erred when he improperly evaluated the state agency psychological consultants' findings regarding his moderate social interaction

limitations. No. 1:21CV289, 2022 WL 6175173, at *4–6 (M.D.N.C. Oct. 7, 2022), *report and recommendation adopted,* No. 1:21CV289, 2023 WL 1102603 (M.D.N.C. Jan. 30, 2023). More specifically, the claimant asserted that because the consultants opined that he was moderately limited in social functioning and would perform best in settings with minimal social interaction, the ALJ's RFC—which permitted frequent social interaction with coworkers and supervisors— lacked substantial evidence and required remand. *Id.* at *4.

The *Keene* Court found that even assuming the ALJ erred[4] in not reconciling the difference between the social interaction limitations recommended by the psychological consultants with the RFC, any error was harmless, because the jobs identified by the Vocational Expert ("VE") did not require any meaningful social interaction. *Id.* at *5–6. (collecting cases). *See also Carpenter v. Colvin*, No. 5:24-CV-196-FL, 2024 WL 5504881, at *4 (E.D.N.C. Dec. 19, 2024), *report and recommendation adopted sub nom. Carpenter v. Dudek,* No. 5:24-CV-196-FL, 2025 WL 893803, at *4 (E.D.N.C. Mar. 24, 2025) (citing *Keene* and finding similar discrepancy between psychological consultant's social limitation recommendations and the RFC to be harmless error where all of the jobs the ALJ found Jones capable of had a People rating of 8).

Here, as in *Keene* and *Carpenter,* the Dictionary of Occupational Titles ("DOT") codes for all three of the jobs the ALJ found Jones able to perform contain a fifth digit (also known as the "People" rating) of "8." *See 361.687-014* [Laundry] *Classifier, DICOT 361.687-014;* 789.687-134 Rag Sorter and Cutter, DICOT 789.687-134; 222.687-014 Garment Sorter, DICOT 222.687-014. This is "the lowest possible level of human interaction that exists in the labor force." *Keene,* 2022

---

[4] Although the ALJ in *Keene* allegedly failed to mention the psychological consultants' opinions *at all*, the allegation of error is functionally the same as Jones'; that is, the ALJ developed an RFC that allowed for more social interaction with co-workers and supervisors than was suggested by the psychological consultants, and the ALJ's failed to reconcile the relevant opinions with the RFC. *See Keene,* 2022 WL 6175173, at *4–6.

11

WL 6175173, at *6 (quoting *Fletcher v. Colvin*, No. 1:15CV166, 2016 WL 915196, at *10 (M.D.N.C. Mar. 4, 2016)). Coupled with the lowest possible People rating, all three jobs rate the task of "Taking Instructions–Helping" as "Not Significant" and reflect the tasks of "Talking" and "Hearing" as "Not Present-Activity or condition does not exist." *See 361.687-014* [Laundry] *Classifier, DICOT 361.687-014;* 789.687-134 Rag Sorter and Cutter, DICOT 789.687-134; 222.687-014 Garment Sorter, DICOT 222.687-014. Thus, because the jobs identified by the VE do not require any notable social interaction, Jones has not—and indeed, never—alleged that an RFC limiting her to "infrequent" contact with colleagues and supervisors would result in a different outcome.

The Court will therefore align with our sister courts in concluding that even assuming the ALJ erred in failing to explain the discrepancy between the consultants' opinions and the RFC, the error was harmless and remand is not warranted.

## I.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

Plaintiff's appeal (Doc. No. 6) is **DENIED** and the Commissioner's decision is **AFFIRMED.**

**SO ORDERED ADJUDGED AND DECREED**.

Signed: June 4, 2026

Kenneth D. Bell
United States District Judge

12